# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO. 4:16-cv-00160-JHM

| ROGER DARYL FRENCH | APPELLANT/CROSS-APPELLEE |

V.

| SECURITY SEED AND CHEMICAL, INC. | APPELLEE/CROSS-APPELLANT |

V.

| DENA G. FRENCH | CROSS-APPELLEE |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon an appeal from the Bankruptcy Court of the Western District of Kentucky by Defendant Roger French (DN 7), as well as a cross-appeal by Plaintiff Security Seed and Chemical, Inc. (hereinafter "Security Seed"). (DN 9). Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

The relevant facts of this case have been set forth in the opinion of the Bankruptcy Court, *In re French*, 563 B.R. 212 (Bankr. W.D. Ky. 2016), and there is no need to fully repeat them here. Briefly, Roger and Dena French filed for Chapter 7 bankruptcy protection on September 9, 2015. Security Seed commenced an adversary proceeding, seeking to except from discharge amounts owed to it by the Frenches, as well as seeking a ruling on the validity of its liens on several pieces of personal property belonging to the Frenches. The debts at issue arose from the Frenches' purchase of various farming supplies from Security Seed on credit, intially through a line of credit extended by AgQuest, a third party finance company, and then later through an open account with Security Seed. After the Frenches defaulted on these debts,

AgQuest assigned the debt owed to it by the Frenches to Security Seed, and Security Seed obtained a default judgment against the Frenches for failing to repay these debts. *Security Seed and Chemical, Inc. v. Roger Daryl French*, No. 4:14-cv-00093 (W.D. Ky. Oct. 30, 2014). Security Seed then had a sheriff attempt to levy upon certain pieces of personal property belonging to the Frenches; however, he did not physically remove the property from the Frenches' residence.

The Bankruptcy Court determined that $49,576.62 that was advanced to the Frenches pursuant to the AgQuest line of credit was exempt from discharge under 11 U.S.C. § 523(a)(2)(B) as to Roger French, but $66,633.75 that was advanced pursuant to the open account with Security Seed was not exempt from discharge as to both Roger and Dena.[1] However, the court also determined that the lien upon the personal property of the Frenches never became effective, as the sheriff never levied upon the property. Roger French now appeals the Bankruptcy Court's finding that the AgQuest line of credit was exempt from discharge, and Security Seed has filed a cross-appeal of the Bankruptcy Court's finding that the personal property was never levied upon.

## II. STANDARD OF REVIEW

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). On appeal, a district court reviews the bankruptcy court's finding of fact under a clearly erroneous standard, but reviews de novo the bankruptcy court's conclusions of law. *In re Isaacman*, 26 F.3d 629, 631 (6th Cir. 1994). A finding of fact is clearly erroneous when "although there is evidence to support that finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

---

[1] The Bankruptcy Court found that both debts were dischargeable as to Dena French, and Security Seed has not appealed that portion of the court's ruling.

has been committed." *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 274 F.3d 1043, 1047 (6th Cir. 2001) (quotations omitted).

### III. DISCUSSION

#### A. EXEMPTIONS FROM DISCHARGE

The Court begins with Roger French's appeal from the Bankruptcy Court's determination that the advances made pursuant to the AgQuest line of credit were exempt from discharge under 11 U.S.C. § 523(a)(2)(B). That statute states:

> A discharge under Section 727 . . .of this title does not discharge an individual debtor from any debt—
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor knew the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with the intent to deceive...

The Bankruptcy Court found that all four elements of the statute had been met so as to exempt the debt from discharge. French asserts that the Bankruptcy Court's conclusions as to the first, third, and fourth elements were clearly erroneous.

First, the Bankruptcy Court's conclusion that French made a materially false statement in writing is not clearly erroneous. The court found that French understated his liabilities by $433,265 when applying for the $50,000 line of credit, and it heard testimony that had French stated his true liabilities on the application, it would have resulted in a denial of the loan, as French's net worth would have been below zero. Based on the amount of liabilities concealed and the effect that their disclosure would have had on the loan, the Bankruptcy Court was justified in concluding that French made a materially false statement in writing.

3

Next, French makes two challenges to the Bankruptcy Court's finding that Security Seed reasonably relied upon the materially false statement. He first argues that only AgQuest, not Security Seed, relied on his misrepresentation, and as such, Security Seed should not be allowed to stand in the shoes of AgQuest and assert AgQuest's reliance as a defense to discharge. He further argues that, even if Security Seed stood in the shoes of AgQuest, the reliance placed on his representations in extending him a line of credit was unreasonable.

Whether a creditor's assignee may assume the positions taken by the assignor is a question of law which the Court reviews de novo. However, the Bankruptcy Court correctly concluded that any reliance AgQuest placed on French's representations may be used by Security Seed to establish an exemption from discharge. "Generally, an assignee . . . acquires no greater right than was possessed by his assignor . . . but simply stands in the shoes of the latter . . ." *Whayne Supply Co. v. Morgan Const. Co.* 440 S.W.2d 779, 782–83 (Ky. 1969). Security Seed, by having the debt assigned to it by AgQuest, stood in the shoes of AgQuest and could assert AgQuest's reliance as a defense to discharge of the debt.

Further, the Bankruptcy Court's conclusion that AgQuest and Security Seed reasonably relied on French's misrepresentations is not clearly erroneous. The court evaluated the five factors used to determine whether reliance is reasonable under *In re Oster*, 474 F. App'x 422, 425 (6th Cir. 2012) (citing *In re Ledford*, 970 F.2d 1556 (6th Cir. 1992)), and concluded that AgQuest reasonably relied on French's application.

> The Sixth Circuit has identified five factors that may affect the reasonableness of a creditor's reliance: (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were

> not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations. *Jennings v. Bodrick* (*In re Bodrick*), 509 B.R. 843, 857 (Bankr. S.D. Ohio 2014) (quoting *Oster v. Clarkston State Bank* (*In re Oster*), 474 Fed.Appx. 422, 425 (6th Cir. 2012)).
>
> In this case, the Plaintiff did have a close personal relationship with the Defendants. Mr. Thomas testified that the Plaintiff had a relationship with Mr. French and his family. Plaintiff had provided the Defendants financing for several years prior to the 2013 Direct Loan, with no problems. The debt was incurred by Defendants for business reasons. While the credit report indicating slightly higher liabilities than listed may have raised a red flag, it was not so substantial to taint the whole analysis of the Loan Application. Finally, and most significantly, AgQuest did perform an investigation, minimal as it was, and it did not uncover the massive amount of liabilities the Defendants failed to list on the Loan Application. In light of the totality of the circumstances in this case, the Plaintiff has demonstrated that it reasonably relied upon the Defendants' statements in the Loan Application. Compare *In re Brent*, 539 B.R. 788, 806 (Bankr. S.D. Ohio 2015) (no reasonable reliance where no minimum investigation undertaken).

*In re French*, 563 B.R. at 222. This conclusion is not clearly erroneous, as it is supported by the evidence that was before the Bankruptcy Court. The court heard extensive testimony on the procedures AgQuest has in place for ensuring that the only loan applications that are approved are those that are likely to be repaid. It also heard testimony as to French's relationship with Security Seed and AgQuest, as well as his history of providing timely repayment of prior loans from them. French argues that any investigation short of requesting tax returns, balance sheets, or other financial documents was unreasonable. However, based on the relatively small amount of money being requested compared to French's purported net worth and French's history of repaying lines of credit with AgQuest and Security Seed in the past, the Bankruptcy Court's conclusion was "reasonable and supported by the evidence." *In re Southern Indus. Banking Corp.*, 809 F.2d 329, 331 (6th Cir. 1987). As such, the conclusion was not clearly erroneous, and this Court will not overturn it.

Finally, the Bankruptcy Court's determination that French acted with the intent to deceive was not clearly erroneous. "Since it is unlikely that the Defendant will ever admit his intent to deceive, a finding of actual intent may be based upon circumstantial evidence or inferences drawn from a course of conduct." *In re Cole*, 164 B.R. 947 (Bankr. S.D. Ohio 1993). The Bankruptcy Court in this case heard sufficient evidence to support its conclusion that French acted with the intent to deceive. French had filled out the same or a similar application in the past, meaning he was familiar with what information was required. French was in financial trouble at the time he filled out the application, giving him a motive for ensuring that he received the line of credit. Finally, French testified that he believed the application was not asking for all of his liabilities but rather the amount he expected to pay towards his debts in the next year, an explanation that the Bankruptcy Court specifically found was not credible. This Court may not "substitute its assessments of credibility in place of the explicit findings made by the bankruptcy court. When differing views of the evidence are possible, the bankruptcy court's findings cannot be clearly erroneous." *In re Forbes*, 372 B.R. 321 (B.A.P. 6th Cir. 2007). Thus, the Court accepts the Bankruptcy Court's conclusion as to French's credibility, a conclusion which tends to show that he acted with the intent to deceive.

French argues that the Bankruptcy Court should be reversed, as there is no evidence that he intended to never repay the loan when he made his misrepresentations. But the plain text of 11 U.S.C. § 523(a)(2)(B) defeats this argument, as it does not require an intent to withhold repayment. Instead, it is merely the intent to deceive that is required. French could have filled out the application with every intention of repaying the loan, but if he misrepresented his liabilities so that he would be eligible for a loan that would have otherwise been denied, his

conduct was sufficient under § 523(a)(2)(B) to exempt the debt from discharge.[2] Therefore, the decision to exempt from discharge the $49,576.62 that was advanced to French pursuant to the AgQuest line of credit was not clearly erroneous, and the decision is **AFFIRMED**.

### B. VALIDITY OF LIENS

On cross-appeal, Security Seed argues that the Bankruptcy Court incorrectly determined that a levy does not occur unless the sheriff takes actual possession of the property. Instead, Security Seed argues that a levy can occur while the property remains in the possession of the debtor, as the Bankruptcy Court found occurred here. Whether actual possession is required to levy upon personal property is a legal question that this Court reviews de novo.

The Bankruptcy Court found that a lien does not become effective unless there is a levy on the property, and a levy requires actual possession of the property. However, the authorities relied upon by the Bankruptcy Court only tangentially address the situation at hand and the relevant statutes. *See Thacker v. Kentucky*, 284 S.W.2d 325 (Ky. Ct. App. 1955) (examining requirements for levy under since-repealed KRS § 425.225, rather than under KRS § 426.383); *United States v. Dishman Ind. Oil, Inc.* 46 F.3d 523 (6th Cir. 1995) (examining priority of tax liens); Levy, *Black's Law Dictionary* (10th ed. 2014). The most extensive discussion of what is required for a levy in Kentucky appears in *C.T.C. Investment Co. v. Daniel Boone Coal Corp.*, 58 F.2d 305 (E.D. Ky. 1931). The court in that case stated that, in order for there to be a valid levy,

> [t]here must be a change of possession from the defendant to the officer. He must do some act which, if not protected by his writ, would make him a trespasser. No doubt this is the general rule. The law on the subject is often stated in this way. But it is recognized that this is not absolutely essential in every case. Something may

---

[2] The only authority French cites to in support of his argument that there must be an intent to withhold repayment, *In re Taylor*, 49 B.R. 849, 850 (Bankr. E.D. Pa. 1985), pertains exclusively to 11 U.S.C. § 523(a)(2)(A), which the Bankruptcy Court found inapplicable to this case.

7

> be done which is the equivalent of such action on the part of the officer . . . [the officer] must take the possession or control of it. According to this it is sufficient if the officer take control of the property. It is not necessary that he take possession.
>
> ***
>
> What act he could do short of an actual seizure or manucaption which would subject him to prosecution as a trespasser is not indicated. But it is recognized that there may be such a thing as a constructive seizure, and that this is accomplished by the officer reducing the property to his control, i.e., bringing it so far under his subjection that he could exercise control over it or by exercising or assuming to exercise dominion by virtue of his writ.
>
> ***
>
> There are some things which it can be said do not constitute a constructive seizure. A mere viewing of the property is not such. The survey which the sheriff made of the stock of goods of the defendant in its commissary and of its equipment was not a constructive seizure. Nor did the indorsement of the levy on the back of the execution amount thereto.

*C.T.C. Investment*, 58 F.2d at 314–16 (internal citations and quotations omitted). Later cases have not changed the rule that, in order to validly levy upon property, "the officer must do such acts as would subject him to an action of trespass but for the protection of the execution," and that he may either actually seize or constructively seize the property. *W.E. Stephens Mfg. Co. v. Miller*, 429 S.W.2d 384, 387 (Ky. 1968).

Based on these authorities, the Court cannot agree that a levy requires an officer to take actual physical possession of the property to be effective. However, the Bankruptcy Court recognized the authority which indicates that it is sufficient than a levying officer do something to bring the property within his control equivalent to a claim of dominion over the property, and concluded that such was not done is this case. The Bankruptcy Court's findings of fact do not support Security Seed's contention that it had a valid lien on the Frenches' personal property.

Security Seed only challenges the legal standard applied by the Bankruptcy Court; it does not contest its factual findings as they pertain to the attempted levy. The Bankruptcy Court found the following facts:

> [A] Writ of Execution was issued to the Sheriff of Union County, Kentucky. The Execution Order issued March 3, 2015, was returned bearing the date of March 13, 2015, by the Sheriff of Union County, Kentucky, reflecting that it was served on the Defendant, Dena G. French, and Defendant Roger Daryl French. Dena French's Levying Officer's Return noted: "Located all items on asset list other than the 2005 Sea Ray. Dena advised it was in Illinois." Roger French's Levying Officer's Return notes: "Located all items other than 2005 Sea Ray. Dena advised it was in IL." There was no evidence presented that the sheriff took possession of any of the items that were described on the attachment to the Execution Order.

*In re French*, 563 B.R. at 220. Based on these factual findings, the Bankruptcy Court concluded that a return which simply states that the levying officer located the property is *insufficient*[3] to indicate that "he brought the property within his immediate control, or that he did something which is the equivalent as exercising dominion over the property." *Id*. at 226. This Court agrees. The officer took neither actual or constructive possession of the property. The sheriff appears to have done exactly what *C.T.C. Investment* says is insufficient for a levy: "A mere viewing of the property is not [sufficient]. The survey which the sheriff made of the stock of goods of the defendant . . . was not a constructive seizure. Nor did the indorsement of the levy on the back of the execution amount thereto." *C.T.C. Investment*, 58 F.2d at 316.

Security Seed argues that the actions taken by the Sheriff in coming into the Frenches' residence and "locat[ing]" the items of personal property amount to a trespass, but the Court cannot agree. In *McBurnie v. Overstreet*, 47 Ky. (8 B. Mon.) 300, 303–04 (1847), the Court of Appeals of Kentucky noted that while it may be sufficient for the sheriff to merely come onto the

---

[3] The opinion uses the word sufficient instead of insufficient, which is clearly an error.

property when he is levying upon the real property itself, the act of trespass upon goods and chattels requires an act sufficient to subject the sheriff to an action for trespass *on the goods and chattels*. Based on the findings of the Bankruptcy Court, the actions of the sheriff could not give rise to an action for trespass, as there was no interference with the possession of those goods. Despite Security Seeds contentions that a seizure took place, there is no evidence in the record or the findings of the Bankruptcy Court to support Security Seed's contention that the Sheriff did so much as touch the property; the only evidence indicates that he "located" the items, which is insufficient to seize the item, even under the constructive seizure standard. With no seizure, the lien was never validated. Therefore, the decision of the Bankruptcy Court is **AFFIRMED**.[4]

### IV. CONCLUSION

For the reasons set forth above, the judgment of the Bankruptcy Court is **AFFIRMED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

April 25, 2017

cc: counsel of record
    Hon. Alan C. Stout, U.S.B.C. Judge

---

[4] The parties' briefs allude to potential issues surrounding the lien on the Sea Ray boat and whether the attempted levy on it must be analyzed separately from the other items. However, the Bankruptcy Court made no express finding as to the Sea Ray boat separate from the other items. The court stated in a footnote that "[s]ome of the pleadings make reference to the fact that the sheriff may have taken possession of some or all of the items at a later date, but there was no evidence presented at trial to substantiate this allegation." *In re French*, 563 B.R. at 226 n. 6. This presumably references allegations that the Sea Ray boat was later seized when it was in Kentucky, rather than in Illinois. However, no party has challenged the Bankruptcy Court's factual findings as to the attempted levy on the Frenches' personal property, including the Sea Ray Boat. As such, this Court will not review those factual findings and accepts the conclusion of the Bankruptcy Court that the Sea Ray boat was never seized. Thus, the analysis of the other items applies equally to the Sea Ray boat.